**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3335
_____

ROBERTO CARLOS FLORES, a/k/a Roberto Carlos Flores Leiva;
SAIDA MARIVEL VASQUEZ, a/k/a Saida Marivel Paredas,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A094 116 093 and A089 255 834)
Immigration Judge:  Honorable Susan G. Roy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 13, 2011

Before:  AMBRO, GREENAWAY, JR. ,  and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 1, 2011)
_____

OPINION
_____

PER CURIAM

Roberto Carlos Flores and his wife, Saida Marivel Vasquez, petition for review of

an order of the Board of Immigration Appeals ("BIA").  For the reasons that follow, we will dismiss the petition for review.

Flores is a native and citizen of El Salvador.  His wife is a native and citizen of Ecuador.  The couple has a child, who was five months old at the time of the hearing before the Immigration Judge ("IJ").  Flores entered the United States without inspection in 1990.  He was charged with being removable on that basis.[1]  Flores applied for special rule cancellation under the Nicaraguan Adjustment and Central American Relief Act of 1997, Pub. L. no. 105-100, 111 Stat. 2193, 2196 ("NACARA").  He also applied for cancellation of removal under section 240A(b) of the Immigration and Nationality Act ("INA") [8 U.S.C. § 1229b(b)]; withholding of removal under INA § 241(b)(3) [8 U.S.C. § 1231(b)(3)], protection under the Convention Against Torture ("CAT") and voluntary departure.  Vazquez originally applied for statutory withholding and CAT relief, but withdrew those applications, so that she sought only relief under NACARA as derivative of her husband, or voluntary departure in the alternative.

In support of his application for withholding of removal and protection under the CAT, Flores testified that towards the end of 1989 he was detained in El Salvador by Salvadoran guerillas, whom he now identifies as members of Farabundo Marti Liberación Nacional ("FMLN").  A.R. 187-88.  He was detained overnight and forced to do

---

[1] Vasquez was also so charged.  She apparently entered the U.S. without inspection in 2005.  A.R. 634.

strenuous exercises. He was released the next day when his mother begged for his release. The guerillas agreed to release him on the condition that any time they came, Flores would have to have information about the army or food or water to provide the guerillas. A.R. 189. Flores said his mother provided food or water to the guerillas two or three times. A.R. 190. She would hide Flores from the guerillas and would provide the food or water herself. Id.

Flores was asked why his original application and supporting affidavit stated that it was he himself who was providing food to the guerillas, and that the agreement for his release was between himself and the guerillas. A.R. 197-98. He tried to explain that the agreement just meant that his family would provide food, not that he himself would do it. He conceded that he did tell the asylum unit that "he" would provide the food, but he did not necessarily mean that he would do it personally, rather than his family. A.R. 200. He explained that he was 17 and unemployed at the time, so he could not have provided the food himself. A.R.190-91.

The IJ denied cancellation under INA 240A(b) because Flores had failed to show that his U.S.-citizen child would suffer exceptional and extremely unusual hardship if Flores were to be returned to El Salvador. The IJ noted that the child had no health problems and there appeared to be no reason that she could not assimilate in El Salvador. The IJ noted that it was not even clear whether the child would be returning to El Salvador with Flores.

3

The IJ found Flores was not credible to the extent he testified that it was not he who provided food and information to the guerillas. A.R. 54-59. The IJ also found the FMLN was a terrorist group pursuant to INA § 212(a)(3)(B)(vi)(III) [8 U.S.C. 1182(a)(3)B)(vi)(III). A.R. 62.[2] The IJ found that Flores had provided material support to a terrorist organization, even if unwillingly. The IJ found that Flores was therefore ineligible for relief under NACARA, and ineligible for statutory withholding of removal and withholding of removal under the CAT. The IJ found he would still be potentially eligible for deferral of removal under the CAT, but stated that there was "no evidence that the government of El Salvador would specifically intend to instigate or consent or acquiesce to the torture of the respondent . . . ." A.R.67. The IJ also found that Flores could not show good moral character for the purposes of NACARA relief because he had provided false testimony, and that even if it did not rise to the level of false testimony, he "purposely tr[ied] to provide testimony that would minimize his activities in relation to

---

[2] The IJ's decision states that it is a terrorist group as the "term is defined in 212(a)(3)(B)(very important), subsection (III) of the Act . . . ." A.R. 62. It appears that the "very important" is a transcription error—it is clear from the context that the IJ is referring to subsection (vi)(III). As the Government notes in its brief, the statute provides three ways that a group can be a terrorist organization. Resp. Br. at 6, n.4. Two involve designation as a terrorist organization by the Secretary of State; the third statutory definition is that a terrorist organization is a "group of two or more individuals, whether organized or not, which engages in the activities described in subclause (I), (II), or (III) of clause (iv) [of INA § 212(a)(3)(B), 8 U.S.C. § 1182(a)(3)(B)]." INA § 212(a)(3)(B)(vi)(III) [8 U.S.C. § 1182(a)(3)(B)(vi)(III)]; Daneshvar v. Ashcroft, 355 F.3d 615, 626-27 (6th Cir. 2004). The IJ here referred to FMLN as a "tier three" terrorist group, thus apparently finding it qualified under INA § 212(a)(3)(B)(vi)(III).

4

the FMLN for the sole purpose of establishing eligibility for NACARA, and [the IJ] would [thus] deny his application as a matter of discretion as well." A.R. 60. The IJ found, alternatively, that even if Flores had provided credible testimony, there was no duress exception for providing material support. The IJ further noted that even if Flores' testimony could be construed as simply a clarification of his previous statements, he had "failed to rebut the presumption that he may have provided material support to a terrorist organization" as he had not provided corroboration establishing that he himself did not make an agreement with FMLN and that he "was not at least complicit or assisted in meeting [sic] the family's obligations to the FMLN . . . ." A.R.64-65. The IJ denied Flores' application for voluntary departure, holding that he could not establish good moral character as a matter of law. A.R. 67.[3]

Flores appealed only the denial of relief under NACARA. The BIA dismissed the appeal. The BIA agreed that FMLN was a terrorist organization in 1989, and that providing food to the group constituted material support, citing Singh-Kaur v. Ashcroft, 385 F.3d 293 (3d Cir. 2004). The BIA agreed that Flores' statements that it was his mother, and not he, who provided support, were not credible, given his numerous previous statements that he provided such assistance, and given the lack of any statement to the contrary from his mother. The BIA also rejected Flores' argument that the bar is

---

[3] The IJ denied Vazquez' application pursuant to NACARA, but granted her voluntary departure.

unfair because the support was given under duress, noting that an alien's intent in giving support is not relevant.[4] The BIA also found the IJ did not err in failing to refer the matter to the Department of Homeland Security to determine whether it wished to grant a waiver of the bar, as the IJ lacked jurisdiction to grant a waiver, and was required to follow the mandatory law. The BIA agreed that Flores' material support to terrorists barred relief under NACARA, pursuant to 8 C.F.R. § 1240.66(b)(1) (alien inadmissible under INA § 212(a)(3) not eligible for NACARA relief). The BIA also found "no basis to reverse the [IJ's] alternative determination that the respondent provided false testimony for the purpose of obtaining an immigration benefit under section 101(f)(6) of the ACT, 8 U.S.C. § 1101(f)(6),[5] such that he lacks the good moral character required for NACARA benefits, or [the IJ's] alternative discretionary denial of such benefits based on the same false statements." A.R. 5.

Flores and Vazquez filed a timely petition for review and motion for stay of removal. The Government filed a motion to dismiss, arguing that this Court lacks jurisdiction to consider the sole issue raised by Flores; i.e., whether the IJ erred in

---

[4] The BIA noted that in Arias v. Gonzales, 143 F. App'x 464, 468 (3d Cir. 2005), this Court held that it had jurisdiction to consider an alien's argument that an involuntariness or duress defense should be implied in § 1182(a)(3)(B)(iv), but the Court did not reach the issue, finding that the alien had provided support voluntarily.

[5] That section provides that "No person shall be regarded as a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . one who has given false testimony for the purpose of obtaining any benefits under this chapter . . . ." 8 U.S.C. § 1101(f) and (f)(6).

6

denying NACARA relief.  The Court denied the motion for a stay of removal and referred the motion to dismiss to the merits panel.  The Government also argues in its brief that the Court should dismiss the petition pursuant to the fugitive-disentitlement doctrine.

We will grant the Government's motion to dismiss.  NACARA provides in pertinent part that the "Attorney General may, under section 240A [8 U.S.C. § 1229b] of the [INA], cancel removal of" an alien who meets certain requirements.  NACARA § 203(b), Pub. L. no. 105-100, 111 Stat. 2193, 2196.  NACARA also provides that special rule cancellation is subject to INA § 242(a)(2)(B) [8 U.S.C. § 1252(a)(2)(B)].  Pub. L. no. 105-100, 111 Stat. 2193, 2196; Argueta v. Holder, 617 f.3d 109, 111 (2d Cir. 2010).  Section 1252(a)(2)(B)(i) strips courts of jurisdiction to review "any judgment regarding the granting of relief under section . . . 1229b."  Notwithstanding the statute's preclusion of judicial review of discretionary decisions, the Court retains jurisdiction over constitutional claims and questions of law raised in the context of a petition for review.  See INA § 242(a)(2)(D) [8 U.S.C. § 1252(a)(2)(D)].

However, we do not reach the many interesting legal questions raised by this petition because adverse credibility findings are factual findings, see Chen v Gonzales, 434 F.3d 212, 216 (3d Cir. 2005), which, in the context of a discretionary decision, we have no jurisdiction to review.  The adverse credibility finding is the basis of the IJ's dispositive discretionary denial of NACARA benefits (and the BIA's subsequent

7

affirmance of that denial), and Flores raises no reviewable legal or constitutional claims in conjunction with that finding. We further lack jurisdiction to consider Flores' argument that he should have been granted deferral of removal under the CAT, as he failed to exhaust his administrative remedies as to that claim. 8 U.S.C. § 1252(d)(1); A.R. 3 (noting that Flores did not challenge denial of CAT relief in his brief to the BIA).

For the foregoing reasons, we will grant the Government's motion to dismiss.[6]

---

[6] Given this disposition, we do not reach the Government's request to dismiss on the basis of the fugitive disentitlement doctrine.